IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
c/o Department of Justice
Washington, D.C. 20530,
              Plaintiff,

v.

BARRY DILLER
c/o IAC/InterActiveCorp
555 West 18th Street
New York, NY 10011

              Defendant.

Civil Action No.

COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY
WITH THE PREMERGER REPORTING AND WAITING REQUIREMENTS
OF THE HART-SCOTT-RODINO ACT

The United States of America, Plaintiff, by its attorneys, acting under the direction of the Attorney General of the United States and at the request of the Federal Trade Commission, brings this civil antitrust action to obtain monetary relief in the form of civil penalties against Defendant Barry Diller. Plaintiff alleges as follows:

NATURE OF THE ACTION

1. Defendant Barry Diller ("Diller") violated the notice and waiting requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"), with respect to the acquisition of voting securities of The Coca Cola Company ("Coke") from 2010 through 2012. On May 23, 2012, Diller made corrective filings for acquisitions of Coke

voting securities made in violation of the Act.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the Defendant and over the subject matter of this action pursuant to Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

3. Venue is properly based in this District by virtue of Defendant's consent, in the Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in this District.

## THE DEFENDANT

4. Diller is a natural person with his principal office and place of business at 555 West 18th Street, New York, NY 10011. Diller is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1). At all times relevant to this complaint, Diller had total assets in excess of $136.4 million. At all times relevant to this complaint, Diller was a member of Coke's board of directors.

## OTHER ENTITIES

5. Coke is a corporation organized under the laws of Delaware with its principal place of business at One Coca Cola Plaza, Atlanta, GA 30313. Coke is a beverage company. At all times relevant to this complaint, Coke was engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1). At all times relevant to this complaint, Coke had total assets

in excess of $12.7 million.

6. CitySearch, Inc. ("CitySearch") was a corporation organized under the laws of Delaware with its principal place of business at 4502 Dyer Street, La Crescenta, CA 91214. CitySearch was a provider of local city guides on the internet. At all times relevant to this complaint, CitySearch was engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1). At all times relevant to this complaint, CitySearch had total assets in excess of $10 million.

## THE HART-SCOTT-RODINO ACT AND RULES

7. The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired to file notifications with the federal antitrust agencies and to observe a waiting period before consummating certain acquisitions of voting securities or assets. 15 U.S.C. § 18a(a) and (b). These notification and waiting period requirements apply to acquisitions that meet the HSR Act's thresholds, which are adjusted annually. For most of 2010, the HSR Act's reporting and waiting period requirements applied to some transactions that would result in the acquiring person holding more than $63.4 million, and all transactions where the acquiring person would hold more than $253.7 million of the acquired person's voting securities and/or assets, except for certain exempted transactions. During most of 2011, those thresholds were $66.0 million and $263.8 million. During most of 2012, those thresholds were $68.2 million and $272.8 million.

8. The HSR Act's notification and waiting period are intended to give the federal

antitrust agencies prior notice of, and information about, proposed transactions. The waiting period is also intended to provide the federal antitrust agencies with an opportunity to investigate a proposed transaction and to determine whether to seek an injunction to prevent the consummation of a transaction that may violate the antitrust laws.

9. Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), rules were promulgated to carry out the purposes of the HSR Act. 16 C.F.R. §§ 801-803 ("HSR Rules"). The HSR Rules, among other things, define terms contained in the HSR Act.

10. Section 801.2(a) of the HSR Rules, 16 C.F.R. § 801.2(a), provides that "[a]ny person which, as a result of an acquisition, will hold voting securities" is deemed an "acquiring person."

11. Section 801.1(a)(1) of the HSR Rules, 16 C.F.R. § 801.1(a)(1), provides that the term "person" means "an ultimate parent entity and all entities which it controls directly or indirectly."

12. Section 801.1(a)(3) of the HSR Rules, 16 C.F.R. § 801.1(a)(3), provides that the term "ultimate parent entity" means "an entity which is not controlled by any other entity."

13. Pursuant to section 801.13(a)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(1), "all voting securities of [an] issuer which will be held by the acquiring person after the consummation of an acquisition" – – including any held before the acquisition – – are deemed held "as a result of" the acquisition at issue.

14. Section 802.21(a) of the HSR Rules, 16 C.F.R. § 802.21(a), provides generally that where a person acquired voting securities of an issuer after filing under the HSR Act and observing the waiting period, subsequent acquisitions of voting securities of the same issuer are exempt from the reporting requirements for a period of five years from the expiration of the waiting period, so long as the value of the voting securities held as a result of the subsequent

acquisitions does not "meet or exceed a notification threshold . . .greater than the greatest notification threshold met or exceeded in the earlier acquisition."  Notification thresholds are set forth in section 801.1(h) of the HSR rules, 16 C.F.R. § 801.1(h).  In June of 2012, the notification threshold relevant to this action were $68.2 million, and $136.4 million.

15. Section (c)(9) of the HSR Act, 15 U.S.C. § 18a(c)(9), exempts from the requirements of the HSR Act acquisitions of voting securities that are solely for the purpose of investment if as a result of the acquisition, the securities held do not exceed 10 per cent of the outstanding voting securities of the issuer.

16. Section 801.1(i)(1) of the Rules, 16 C.F.R. § 801.1(i)(1), defines the term "solely for the purpose of investment."  The definition reads:

> Voting securities are held or acquired "solely for the purpose of investment" if the person holding or acquiring such voting securities has no intention of participating in the formulation, determination, or direction of the basic business decisions of the issuer.

17. Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation.  For violations occurring on or after February 10, 2009, the maximum amount of civil penalty is $16,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009).

## DEFENDANT'S PRIOR VIOLATION OF THE HSR ACT

18. In 1998, Diller was the ultimate parent entity ("UPE") of USA networks, Inc. ("USA"). As UPE of USA, Diller was the acquiring person with the obligation to file notification under the HSR Act for any acquisitions by USA that met the thresholds under the HSR Act.

19. On July 29, 1998, Diller made a corrective filing under the HSR Act for acquisitions by USA of voting securities of CitySearch, which had been consummated without filing and observing the waiting period as required by the HSR Act. In a letter accompanying that corrective filing, Diller acknowledged that the transaction was reportable under the HSR Act but asserted that the failure to file and observe the waiting period was inadvertent.

20. On September 15, 1998, the Premerger Notification Office of the Federal Trade Commission ("Premerger Office") notified Diller that it would not recommend seeking civil penalties for the acquisitions by USA of voting securities of CitySearch. The Premerger Office noted that "Mr. Diller is accountable for instituting an effective program to ensure full compliance with the Act's requirements."

## VIOLATIONS

21. On November 1, 2010, Diller acquired 120,000 shares of voting securities of Coke. As a result of this acquisition, Diller held Coke voting securities valued in excess of $63.4 million.

22. Between November 1, 2010, and April 26, 2012, Diller acquired an additional 605,000 shares of Coke voting securities. The exemption contained in section 802.21(a) of the

HSR Rules, 16 C.F.R. § 802.21(a), described in Paragraph 14, did not apply to these acquisitions, because Diller had not previously filed and observed the waiting period to acquire voting securities of Coke. Pursuant to section 801.1(a)(3) of the HSR Rules, 16 C.F.R. § 801.1(a)(3), each acquisition of Coke voting securities by Diller during this time period resulted in Diller holding a reportable amount of Coke voting securities.

23. Although he was required to do so because he had exceeded the HSR threshold, Diller did not file under the HSR Act prior to acquiring the Coke voting securities on November 1, 2010, or prior to making any of the additional acquisitions between November 1, 2010, and April 26, 2012.

24. On April 27, 2012, Diller acquired an additional 264,000 shares of Coke voting securities through open market purchases at a cost of approximately $20.3 million.

25. As a result of the April 27 transaction, Diller held Coke voting securities valued in excess of $136.4 million.

26. Although he was required to do so because he had exceeded the next higher notification threshold, which at that time was $136.4 million, Diller did not file under the HSR Act prior to acquiring the Coke voting securities on April 27, 2012.

27. Diller did not qualify for the "solely for the purpose of investment" exemption to the reporting requirements of the HSR Act in connection with his acquisitions of voting securities of Coke described in Paragraphs 21-25, because he intended to participate in the formulation, determination, or direction of the basic business decisions of Coke through his membership on the board of directors of Coke.

28. On May 23, 2012, after in-house counsel for Coke had contacted Diller's

representatives to inquire whether the April 27 transaction was subject to the HSR Act, Diller made corrective filings for the Coke voting securities he had acquired. The waiting periods on the filings expired on June 22, 2012.

29. Diller was in continuous violation of the HSR Act during the period beginning on November 1, 2010, when he acquired Coke voting securities that resulted in holding voting securities valued in excess of $63.4 million, and ending on June 22, 2012, when the waiting period expired.

## PRAYER

WHEREFORE, Plaintiff prays:

1. That the Court adjudge and decree that each of Defendant Diller's acquisitions of Coke voting securities beginning on November 1, 2010, and ending on April 27, 2012, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Diller was in violation of the HSR Act each day from November 1, 2010, through June 22, 2012.

2. That the Court order Defendant Diller to pay to the United States an appropriate civil penalty as provided by the HSR Act, 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996); 74 Fed. Reg. 857 (Jan. 9, 2009).

3. That the Court order such other and further relief as the Court may deem just and proper.

4. That the Court award the Plaintiff its costs of this suit.

Dated: _July 2, 2013_

FOR THE PLAINTIFF UNITED STATES OF AMERICA:

_/s/ William J. Baer_
William J. Baer
D.C. Bar No. 324723
Assistant Attorney General

Department of Justice
Antitrust Division
Washington, D.C. 20530

_/s/ Roberta S. Baruch_
Roberta S. Baruch
D.C. Bar No. 269266
Special Attorney

_/s/ Kenneth A. Libby_
Kenneth A. Libby
Special Attorney

Federal Trade Commission
Washington, D.C. 20580
(202) 326-2694